IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Bennis,                              :
                                              :
                    Petitioner                :
                                              :
            v.                                : No. 1823 C.D. 2024
                                              : Submitted: March 3, 2026
Unemployment Compensation                     :
Board of Review,                              :
                                              :
                    Respondent :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: July 7, 2026

        Jennifer Bennis (Claimant), *pro se*, petitions for review of an Order of
the Unemployment Compensation Board of Review (Board).  The Board, reversing
the Referee below, determined that Claimant was ineligible for unemployment
compensation benefits under Sections 3 and 402(b) of the Unemployment
Compensation Law (Law).[1]  We affirm.

        Beginning in 2005, Claimant was employed as a special education
teacher with the Allentown School District (Employer).  Board's Order, 10/11/24, at
Finding of Fact (F.F.) No. 1.  However, in April 2023, Claimant was arrested and
charged with numerous criminal offenses relating to the possession of
methamphetamines.  Claimant subsequently reported her arrest to Employer as she

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§752, 802(b).

was required to do. *Id*. at F.F. Nos. 2-3. As a result of the charges, Claimant's teaching certificate was suspended, *id*. at F.F. No. 4, and, facing the prospect of termination, Claimant tendered her resignation on April 13, 2023. *Id*. at F.F. Nos.4-5.

Upon resigning, Claimant filed an application for unemployment compensation benefits effective April 23, 2023, Certified Record (C.R.) at 3, and the Service Center initially denied the same under Section 3 of the Law. *See* C.R. at 43. Claimant then filed an appeal therefrom to the Referee.

The Referee conducted a hearing on October 25, 2023. As to Claimant's guilt, Employer's representative testified that, to Employer's knowledge, the charges against Claimant remained pending. Referee's Hearing, 10/25/23, Notes of Testimony (N.T.) at 10-11. For her part, Claimant testified that she loved her job and would have continued in her position if the work was available to her, but prior to her resignation, Employer and her union representatives agreed that Claimant should resign. Otherwise, she would have to proceed to a public meeting before Employer's school board and would likely suffer harm to her reputation as a result. *Id*., N.T. at 14-15. Concerning the charges against her, Claimant testified that she was unaware of the methamphetamines on her property as they had belonged to her roommate who was arrested five days prior to her own arrest. *Id*., N.T. at 16-17. By Claimant's own admission, law enforcement arrested her based upon the statement she provided to them. *Id*. Claimant nevertheless entered a not guilty plea thereafter. *Id*.

In a decision dated October 26, 2023, the Referee reversed and determined that Claimant was eligible for benefits. The Referee explained that, under Section 3 of the Law, an employer's burden of proof in demonstrating a

2

claimant's ineligibility requires more than just proof of arrest.[2] C.R. at 124. To that end, the Referee reasoned that Employer proffered no evidence of Claimant's misconduct beyond that of her arrest, such that there could "be no denial of benefits under Section 3 of the Law." *Id*. at 125. Employer appealed to the Board.

In a decision and order mailed on October 11, 2024, the Board reversed the Referee's decision. The Board, after taking judicial notice, found as fact that Claimant ultimately pleaded guilty to possession of a controlled substance in September 2024, Board's Order, 10/11/24, at F.F. No. 7, and determined that Claimant was ineligible for benefits under Section 3 of the Law. *See* C.R. at 151. To this end, the Board opined: "Given [C]laimant's position as a teacher, the possession of drugs even off school premises, is inconsistent with the standard of behavior for an employee such as [C]laimant, who is charged with the supervision of minors and is thus in a position of trust." *Id*. In the alternative, the Board concluded that Claimant would also be ineligible for benefits under Section 402(b) of the Law, 43 P.S. §402(b), because Claimant's resignation stemmed from the threat of public embarrassment rather than imminent discharge. *See* C.R. at 151-52. Claimant subsequently filed a timely petition for review in this Court.[3]

Before us now, Claimant once again challenges the Board's determination that Claimant is ineligible for benefits under Section 3 of the Law because of Employer's failure to demonstrate how her conduct related to her ability to perform her duties as a teacher. Claimant likewise challenges the Board's

---

[2] *See, e.g.*, *Unemployment Compensation Board of Review v. Derk*, 353 A.2d 915, 917 (Pa. Cmwlth. 1976).

[3] This Court's review is limited to deciding if the necessary facts are supported by substantial evidence, whether an error of law was made, and if a party's constitutional rights were violated. *First Federal Savings Bank v. Unemployment Compensation Board of Review*, 957 A.2d 811, 814 n.2 (Pa. Cmwlth. 2008).

conclusion that Claimant's resignation was not the result of a necessitous and compelling cause under Section 402(b) of the Law.

As our Supreme Court has explained, "the issue is not whether the employer had the right to discharge for the questioned conduct of the employee, but rather whether the [Commonwealth] is justified in reinforcing that decision by denying benefits under [the Law] for the complained of conduct." *Frumento v. Unemployment Compensation Board of Review*, 351 A.2d 631, 634 (Pa. 1976); *see also Burger v. Unemployment Compensation Board of Review*, 801 A.2d 487, 491 (Pa. 2002) ("However, the question of justifiable termination and eligibility for unemployment benefits are two different things; an employee may be fired for completely proper reasons, yet remain eligible for benefits."). Because Claimant resigned from her position with Employer, and was not formally terminated by Employer, we will address the parties' arguments concerning Section 402(b) of the Law first.

Eligibility for unemployment compensation benefits turns on whether a claimant bears her burden of proving "either (1) [her] separation from employment was involuntary or (2) [her] separation was voluntary but [s]he had cause of a necessitous and compelling nature[4] that led [her] to discontinue the relationship."

---

[4] Section 402(b) of the Law provides:

> An employe shall be ineligible for compensation for any week –
>
> * * *
>
> (b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . .

43 P.S. §802(b).

4

*Smith v. Unemployment Compensation Board of Review*, 261 A.3d 615, 620 (Pa. Cmwlth. 2021). Whether a claimant's separation from employment was voluntary or involuntary is a question of law reviewable by this Court. *Id*. (citing *Key v. Unemployment Compensation Board of Review*, 687 A.2d 409, 412 (Pa. Cmwlth. 1996)). "Where the employee, without action by the employer, resigns, leaves, or quits employment, that action amounts to a voluntary termination." *Fishel v. Unemployment Compensation Board of Review*, 674 A.2d 770, 772 (Pa. Cmwlth. 1996). To nevertheless constitute a discharge under the Law, an employer's language prompting a claimant's voluntary termination "must possess the immediacy and finality of firing." *Charles v. Unemployment Compensation Board of Review*, 552 A.2d 727, 729 (Pa. Cmwlth. 1989); *see also Sweigart v. Unemployment Compensation Board of Review*, 408 A.2d 561, 563 (Pa. Cmwlth. 1979) ("The degree of certainty in an employer's language resulting in a termination has often been the difference between those cases in which the Courts have found that an employee's termination was voluntary and those in which the employer's . . . act was deemed to effect the termination.").

Claimant chiefly argues that her voluntary termination amounts to a discharge under the Law because Employer "advised that termination was inevitable and she was presented with two options: (1) voluntarily resign to avoid the public embarrassment of being terminated at the April 26, 2023 school board meeting in exchange for receiving all compensation owed; or (2) be publicly terminated at the board meeting and forfeit any such compensation." Claimant's Brief at 8-9. In Claimant's view, although she had attempted to preserve the employment relationship, her decision to resign was common sense to avoid the embarrassment of public termination. *Id*. at 13-14.

In response, the Board distinguishes between voluntary terminations which are meant to avoid imminent discharge – compensable under the Law – and those that are meant to avoid the mere possibility of discharge and are not compensable under the Law. The Board characterizes Claimant's resignation as the latter, rendering Claimant ineligible for benefits under Section 402(b). Board's Brief at 12-13 (citing *Goffi v. Unemployment Compensation Board of Review*, 427 A.2d 1273, 1275 (Pa. Cmwlth. 1981)). To that end, the Board asserts that this Court's decision in *Fishel*, involving a teacher's voluntary termination, controls.

We agree with the Board. In *Fishel*, 674 A.2d at 771, a teacher resigned her position upon learning of a school district administrator's intention to recommend termination to the school board on the basis of the teacher's unsatisfactory performance. More particularly, the administrator explained that the teacher could either face public termination before the school board or she could resign. *Id*. at 771-72. The referee initially credited the "real and substantial" pressure the teacher was faced with and awarded her benefits, but the Board reversed. *Id*. at 772. On appeal, we explained that the school district administrator's recommendation was just that: a recommendation. Indeed, under the Public School Code, a teacher's termination requires a majority vote by the school board itself . *Id*. at 772-73 (citing Public School Code of 1949, Sections 508, 514, and 1108, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§5-508, 5-514, 11-1108). As such, the school district *administrator*'s language did not convey the requisite immediacy and finality of a firing because the fact of discharge was "less than a certainty." *Id*. We therefore concluded that the teacher's "resignation was a voluntary termination without cause of a necessitous and compelling nature that would qualify her for benefits." *Id*. at 773; *see also Smith*, 261 A.3d at 620-622 (applying *Fishel*).

6

Here, the Board found as fact that "[C]laimant was facing the possibility of termination, but the school board would have [had] to terminate her and had not done so when she resigned." Board's Order at F.F. No. 5. The testimony adduced before the Referee bears this out. Employer's witness testified that Claimant's charges only raised the possibility of termination as termination still depended on the school board's vote. *See* Referee's Hearing, N.T. at 9-10. But for Claimant's resignation, Employer's witness similarly testified that she would have had the opportunity to contest her termination. *Id*., N.T. at 10-12. For her part, Claimant testified that she "was told to either resign or they were going to take this to the [school] board and out all the details of [her charges]." *Id*., N.T. at 14. Claimant added that "[t]hey were going to say who I was, tell all the charges, basically embarrass me to death, ruin my name." *Id*. However, Claimant later conceded that the fact of her criminal charges was public information. *Id*., N.T. at 20.

To the extent we sympathize with Claimant's desire to avoid public embarrassment, we nevertheless observe that this reason is insufficient under the Law to warrant a grant of unemployment compensation benefits to Claimant. *See Smith*, 261 A.3d at 622 ("Here, however, [c]laimant opted to be terminated because . . . he felt that going through the hearing process was not worth it . . . . [c]laimant did not resign to avoid being fired.") (emphasis removed). Presently, Claimant did not resign to avoid imminent discharge, she resigned to avoid an embarrassing public hearing in which she viewed her discharge as a foregone conclusion. But, as in *Fishel* and *Smith*, Claimant's resignation was predicated on the advice of those without the authority to terminate Claimant's employment and with language lacking the necessary immediacy and finality to constitute discharge under the Law.

7

We must therefore construe Claimant's resignation as a voluntary termination lacking a necessitous and compelling cause under Section 402(b) of the Law.[5]

Accordingly, we will affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

---

[5] Given our disposition, we need not reach Claimant's arguments concerning Section 3 of the Law.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jennifer Bennis,             :
                                     :
               Petitioner     :
                                       :
           v.                    : No. 1823 C.D. 2024
                                       :
Unemployment Compensation    :
Board of Review,             :
                                       :
              Respondent : 

**O R D E R**

AND NOW, this 7th day of July, 2026, the Unemployment Compensation Board of Review's Order dated October 11, 2024 is **AFFIRMED**.

_____
MICHAEL H. WOJCIK, Judge